RICHARD ALLEN MORAN, Appellant, v. THE STATE OF NEVADA, Respondent.

No. 16300

RICHARD ALLEN MORAN, Appellant, v. THE STATE OF NEVADA, Respondent.

No. 16301

March 31, 1987 · 734 P.2d 712

[Rehearing denied June 25, 1987]

*Lovell, Bilbray & Potter,* Las Vegas, for Appellant.

*Brian McKay,* Attorney General, Carson City; *Rex Bell,* District Attorney, *James Tufteland,* Deputy District Attorney, Clark County, for Respondent.

# OPINION

*Per Curiam:*

After a thorough canvass in the guilt phase of the trial in these two consolidated cases, Richard Allen Moran pleaded guilty to three counts of first degree murder, one count of first degree arson, and one count of robbery. At the penalty hearing in the first case a three-judge panel found that the simultaneous shooting deaths of a bartender and customer in a saloon had been committed under two aggravating circumstances and two mitigating circumstances. In the second case, for the separate and subsequent shooting death of Moran's former wife, the penalty tribunal found that murder also to have been committed under two aggravating circumstances with one mitigating circumstance. The tribunal found that the aggravating circumstances outweighed the mitigating circumstances in both instances and returned three separate sentences of death, one for each murder. Moran raises several assignments of error concerning the convictions and subsequent death sentences. The only error that warrants reversal is the penalty tribunal's finding of two aggravating circumstances in the murder of Moran's former wife. Moran was fairly convicted and sentenced to death for the other two murders.

On August 2, 1984, at approximately 4:30 a.m., appellant Richard Allen Moran entered the Red Pearl Saloon with Tammy Cortez. The two took seats at the bar. The two other persons present were the bartender, Sandra DeVere, and Russell Rhoades, a customer. DeVere was located behind the bar immediately in front of and slightly to the left of Moran and Cortez. Rhoades was seated at the bar immediately to Cortez' right with Moran located to Cortez' left. Suddenly and without warning, Moran removed his eight-shot .45 caliber automatic pistol from his belt and shot DeVere four times. Moran then immediately reached behind Cortez and fired the remaining four rounds into Rhoades. Moran then told Cortez to go behind the bar and pick up the change located on the back counter. Unable to open the cash register, Moran carried it out to his vehicle. Moran then started several fires in various locations in the saloon. Moran and Cortez then left the scene.

Nine days later, on August 11, 1984, Moran went to the apartment of Linda Vandervoort, his former wife. Moran and Vandervoort had been divorced six to eight months before the shootings. Without provocation, Moran suddenly fired seven shots at Vandervoort, five of which entered her body. At least two

rounds passed through a wall and entered an adjacent apartment, one of which shattered the glass top of a coffee table. The occupant of the adjacent apartment was not home at the time of the shooting. Moran then turned the weapon on himself firing the last round into his abdomen. Being unsuccessful at this suicide attempt, Moran attempted to slit his wrists but could not find a knife or other object sharp enough to accomplish the task. Police found Moran in the bedroom of Vandervoort's apartment upon their arrival. Initially, at the crime scene, Moran claimed the carnage had been performed by intruders. Two days later, however, while in the hospital, Moran summoned police in order to make his confession.

Moran first contends that the evidence does not support the findings by the penalty tribunal of aggravating circumstances necessary for imposition of the sentences of death under NRS 200.030 and NRS 200.033.[1]

Regarding the Vandervoort murder, the three-judge penalty tribunal found two aggravating circumstances: (1) depravity of mind, NRS 200.033(8), and (2) the murder was committed by a person who knowingly created a risk of death to more than one person by means of a weapon and course of action which was hazardous to the lives of more than one person. NRS 200.033(3).

We agree with the appellant that Vandervoort's murder did not involve circumstances which justified a finding of "depravity of mind." The facts of this case do not exhibit depravity of mind as contemplated in NRS 200.033(8). The circumstances of this

---

[1]NRS 200.030(4) provides, in pertinent part: "Every person convicted of murder of the first degree shall be punished: (a) By death, only if one or more aggravating circumstances are found and any mitigating circumstance or circumstances which are found do not outweigh the aggravating circumstance or circumstances."

NRS 200.033 delineates expressly nine of the aggravating circumstances which may be found in order to impose a sentence of death under NRS 200.030. The pertinent portions of NRS 200.033 which are at issue on this appeal read as follows:

200.033 Circumstances aggravating first degree murder. The only circumstances by which murder of the first degree may be aggravated are:

. . . .

3. The murder was committed by a person who knowingly created a great risk of death to more than one person by means of a weapon, device or course of action which would normally be hazardous to the lives of more than one person.

. . . .

8. The murder involved torture, depravity of mind or the mutilation of the victim.

9. The murder was committed upon one or more persons at random and without apparent motive.

murder were these: After talking with Vandervoort for a few minutes Moran asked her if she had read about the Red Pearl shootings. As she turned to answer, Moran immediately began firing. There is no indication of torture or sadistic acts performed by Moran. Vandervoort appears to have died instantly with no disturbance occurring to her body other than the gunshot wounds. As cold-blooded and malicious as the killing was, under the guidance given to us by the United States Supreme Court, we must conclude that the record does not support a finding of depravity of mind under NRS 200.033(8). Godfrey v. Georgia, 446 U.S. 420 (1970); Deutscher v. State, 95 Nev. 669, 601 P.2d 407 (1979); *see also* Rogers v. State, 101 Nev. 456, 705 P.2d 644 (1985); Neuschafer v. State, 101 Nev. 331, 705 P.2d 609 (1985).

We must also conclude that the evidence does not support the tribunal's finding that Vandervoort's murder "was committed by a person who knowingly created a risk of death to more than one person. . . ." NRS 200.033(3). There were no other persons present in the apartment when Moran shot Vandervoort. *See* Nevius v. State, 101 Nev. 238, 669 P.2d 1053 (1985). There is also no evidence showing that any neighbor was at an immediate risk of death nor was Moran aware that any other person was within close proximity of the crime scene. *See* State v. Nash, 694 P.2d 222 (Ariz. 1985). The finding of the second aggravating circumstance in the Vandervoort murder under NRS 200.033(3) therefore cannot stand.

Because neither of the aggravating circumstances in the Vandervoort murder can be sustained, the sentence of death in that case must be reversed. NRS 200.030. However, in light of the overwhelming evidence of Moran's guilt in Vandervoort's murder, a sentence of life imprisonment without the possibility of parole will be imposed in place of the death sentence. NRS 177.055(3)(c).

Moran next contends that the evidence fails to support the aggravating circumstances found by the penalty tribunal in the Red Pearl Saloon murders.

The first aggravating circumstance found by the tribunal in the Red Pearl case is that the murders were committed upon one or more persons at random and without apparent motive. NRS 200.033(9). By his own admission, in his suicide notes and in his video-taped confession, Moran stated that he had no idea why he killed DeVere and Rhoades at the Red Pearl.

Moran points to the inconsistency of this finding with the fact that Moran was also found guilty of robbery. This fact, Moran

claims, provides a definite and apparent motive and therefore negates a finding of an aggravating circumstance under NRS 200.033(9). However, in viewing the taped confession, when asked by the detective to describe the time at which he formed the intent to rob the saloon, Moran hesitated for a moment and then stated that he probably formed the idea the instant before the shooting. Although these facts may create some conflict, the evidence indicating that Moran killed the two victims at the saloon randomly and without motive is substantial; therefore, the evidence supports a finding of an aggravating circumstance under NRS 200.033(9). *See Deutscher v. State,* above.

Moran also attacks the finding of the second aggravating circumstance in the Red Pearl murders. Under NRS 200.033(3), the tribunal found that Moran knowingly created a risk of death to more than one person by means of a weapon, device or course of action which would normally be hazardous to the lives of more than one person. This finding was based on the fact that Tammy Cortez was seated next to Moran along with the victim, Rhoades, when Moran opened fire.

In *Nevius,* above, this court endorsed a finding of this aggravating circumstance where the gunman shot and killed his victim while the victim's wife lay on the bed near the line of fire. 101 Nev. at 243, 699 P.2d at 1056. The fact that Moran reached around Cortez to shoot Rhoades, who was seated immediately to the right of Cortez, is sufficient to support a finding that Moran "knowingly created a risk of death to more than one person." *Nevius v. State,* above; NRS 200.033(3).

Both aggravating circumstances found by the three-judge panel in the Red Pearl murders are soundly supported by the evidence; and, therefore, the two sentences of death for the killing of DeVere and Rhoades must stand.

We have carefully considered Moran's remaining assignments of error and conclude that they are meritless.

NRS 177.055(2)(d) requires this court to review a death sentence to determine whether the sentence is disproportionate to penalties imposed in similar cases throughout the state, taking into consideration the nature of the crime and the defendant.[2]

The record reveals that the Red Pearl murders were a senseless and mindless act of violence. During this same unexplained

---

[2]Although subsection (d) of NRS 177.055(2) was eliminated as of June 6, 1985, as a requirement on appeal of death sentences, the prohibition against *ex post facto* laws requires that a proportionality review be done on this appeal since the murders occurred prior to June 6, 1985. Thompson v. State, 102 Nev. 348, 721 P.2d 1290 (1986).

spree, Moran robbed and then set fire to the premises. Under these circumstances, and considering the relative weakness of the mitigating circumstances,[3] we conclude that the sentences of death were properly imposed and are not disproportionate to other cases involving similar circumstances. *See* Miranda v. State, 101 Nev. 562, 707 P.2d 1121 (1985); Snow v. State, 101 Nev. 439, 705 P.2d 632 (1985); Farmer v. State, 101 Nev. 419, 705 P.2d 149 (1985); Nevius v. State, 101 Nev. 238, 699 P.2d 1053 (1985).

Accordingly, we uphold the two death sentences in Appeal No. 16301, and remand the Vandervoort case, Appeal No. 16300, for resentencing to life imprisonment without the possibility of parole.

---

[3]The two mitigating factors found by the tribunal in the Red Pearl case were a lack of prior significant criminal history and Moran's remorse for the killing of DeVere and Rhoades.