EDWARD BENNETT, APPELLANT, v. THE STATE
OF NEVADA, RESPONDENT.

No. 19706

February 23, 1990 787 P.2d 797

[Rehearing denied April 17, 1990]

*Potter & Associates,* Las Vegas, for Appellant.

*Brian McKay,* Attorney General, Carson City; *Rex Bell,* District Attorney, *James Tufteland,* Deputy District Attorney, *Daniel M. Seaton,* Deputy, Clark County, for Respondent.

## OPINION

*Per Curiam:*

Following a jury trial, the district court convicted appellant Edward Bennett of attempted robbery with use of a deadly weapon, murder with use of a deadly weapon, and attempted murder with the use of a deadly weapon. At the conclusion of the penalty phase, the jury found that aggravating circumstances outweighed the mitigating circumstances. The district court sentenced appellant to death pursuant to the jury's verdict. On appeal, appellant raises numerous issues, none of which have merit.

### The Facts

On February 8, 1988, appellant purchased a .45 caliber handgun at the Van Wagenen Finance Company, a pawn shop in Provo, Utah. Appellant was 18 years old. On February 9, 1988, appellant and Joe Beeson entered the Stop N'Go Market, located at 1201 E. Sahara Avenue, Las Vegas. Derrick Franklin, a black man, entered the store directly after appellant. As Franklin went to the back of the store, Beeson placed a piece of candy on the counter. As Michelle Moore, the clerk at the cash register, rang up the candy, appellant pulled out his .45 caliber handgun and shot her in the face, killing her instantly. Franklin later testified that there was no conversation, argument, or shouting between the parties. Appellant then gave the gun to Beeson and told him to "get the nigger," referring to Franklin. While appellant jumped over the counter and unsuccessfully attempted to open the cash drawer, Beeson approached Franklin with the gun. Franklin pleaded with Beeson not to shoot him and ran out of the store. Beeson fired at Franklin and continued firing until one of the shots struck Franklin in the leg.

The police found appellant's fingerprints on the door and the cash register counter at the Stop N'Go Market. The police also

determined that appellant owned the gun that was used to kill Ms. Moore.

On March 5, 1988, appellant told his friend, Jeffery Chidester, about the circumstances surrounding the murder and bragged that he and Beeson were on a "killing spree." Chidester reported the conversation to the Utah police. Several days later, the police department informed Chidester that he was entitled to a reward for providing them with this information. Chidester received $3,000.00 prior to testifying at the preliminary hearing and $29,000.00 after the preliminary hearing.

The Utah police obtained a warrant to search appellant's house in Lehi, Utah. Appellant's father answered the police officer's knock on the front door. After the officers advised appellant's father why they were there, he let the officers into the house. While searching for clothing listed in the warrant, the police officers observed some of appellant's "poetry" on pieces of paper.[1] The officers seized appellant's poetry and thereafter arrested appellant.

The State of Nevada subsequently charged appellant with attempted robbery with use of a deadly weapon, murder with use of a deadly weapon, and attempted murder with use of a deadly weapon. Over appellant's objections at trial, the district court admitted the poetry into evidence. The jury found appellant guilty of the crimes charged. At the conclusion of the penalty hearing, the jury found that the State had proven four aggravating circumstances beyond a reasonable doubt: (1) that the murder was committed by a person who knowingly created a risk of death to more than one person; (2) that the murder was committed while the person was engaged in the commission of a burglary; (3) that the murder was committed while the person was engaged in attempted robbery; and (4) that the murder was committed at random and without apparent motive.[2] NRS 200.033. The jury found that the aggravating circumstances outweighed the mitigating circumstances and imposed a sentence of death. This appeal from the judgment of conviction and the imposition of the death penalty followed.

---

[1]The poetry includes the following: "My thirst for blood is now calm, but it shall rise again. My power is so strong I need to cause some death. I'm so fuckin' powerful and my reigning just begun as I kill and kill again. Death is rising from the air as the thunderbolts strike. Blood is dripping from the wall. Someone gonna, someone's gonna die."

[2]The jury also concluded that appellant proved three mitigating circumstances beyond a reasonable doubt: (1) no previous criminal history; (2) the youth of appellant; and (3) alcohol and drug usage.

## The Guilt Phase

Relying on Franklin v. State, 94 Nev. 220, 577 P.2d 860 (1978), appellant argues that the district court violated his right to due process when it admitted Jeffrey Chidester's testimony. Specifically, appellant claims that Chidester was compelled to testify in a particular fashion in order to obtain favorable treatment. *Franklin*, however, is distinguishable on the facts alone. In that case, the witness was an accomplice to the crime, and charged with second degree murder rather than first degree murder in return for his testimony against his accomplice.

Unlike *Franklin*, Chidester was not an accomplice to the murder. Chidester voluntarily went to the local police following appellant's confession. The officers did not threaten Chidester in any manner to get his cooperation. After Chidester made his statement to the Las Vegas Police, his only request in return was to "get me out of town." Chidester did not find out about the reward until several days after he made his statement to the police. Therefore, Chidester's testimony was properly admitted.

Appellant also asserts that Chidester's alleged inconsistent testimony was insufficient evidence to support his conviction, and that Chidester lied during the preliminary hearing when he denied working for the Utah Police Department as an informant on prior occasions. Any inconsistencies in Chidester's testimony, however, were brought out during cross-examination. Additionally, we note that the evidence supporting the trial jury's verdict was otherwise substantial.[3] In light of that substantial evidence, Chidester's testimony during the preliminary hearing did not prejudice appellant's substantive rights at trial.

## Evidentiary Rulings

Appellant contends that the district court erred by admitting his poetry that was seized during the search of his house. Specifically, appellant contends that the search and his arrest were unlawful and that the fruits thereof should have been suppressed. We disagree.

Valid consent to search can be obtained from a third party who possesses common authority over the premises or has other sufficient relationship to the premises. Snyder v. State, 103 Nev. 275, 738 P.2d 1303 (1987). In addition, once a search warrant is

---

[3]As noted, the evidence at trial established that appellant's fingerprints were found on the door and the counter at the Stop N'Go Market in Las Vegas, and the gun appellant purchased and then sold back to the pawn shop in Provo, Utah was the same gun used to murder Ms. Moore.

obtained and the entry is lawful, the police are where they have a right to be and may arrest a resident provided they have probable cause to do so. State v. Ruth, 435 A.2d 3, 6 (Conn. 1980). In the present case, the search was lawful because appellant's father voluntarily let the police officers inside his house. Moreover, the police entry and search were lawfully conducted pursuant to a properly executed search warrant. Lastly, at the time of appellant's arrest, the police officers had probable cause to believe appellant had committed the felony. *See* Washington v. State, 94 Nev. 181, 183, 576 P.2d 1126, 1128 (1978).[4] Under these circumstances, we conclude that the search and subsequent arrest were lawful.

Appellant also contends that the district court erred by denying his motion to suppress the items seized that were not listed in the warrant. Specifically, appellant contends that seizure of the poetry violated the particularity requirement set out in Andresen v. Maryland, 427 U.S. 463, 480 (1976). We disagree.

A warrantless seizure may be justifiable under the "plain view" doctrine. Johnson v. State, 97 Nev. 621, 624, 637 P.2d 1209, 1211 (1981). The plain view doctrine requires that (1) the officers are lawfully present at the point of observation and (2) the discovery is inadvertent. *Id.* The officers obtained a valid warrant to search appellant's residence for specified items of clothing. The officers had probable cause to believe the clothes would be in appellant's bedroom. *See* Maryland v. Garrison, 480 U.S. 79 (1987). Therefore, the officers were lawfully present in the bedroom, and when they inadvertently observed the poetry and noticed that it dealt with death and killing, the officers lawfully seized the poetry. Thus, the discovery of the poetry was inadvertent because the officers were looking for clothing when they noticed the poetry. Therefore, the district court did not err by admitting the seized poetry pursuant to the plain view doctrine.

## *Prosecutorial Misconduct*

Appellant contends that there were several instances of prosecutorial misconduct. First, appellant contends that the prosecutor improperly interjected his personal opinion in his argument to the jury. Specifically, appellant complains that the prosecutor improperly quoted Harry Emerson Fosdick as saying "[a] person

---

[4]The test as stated in *Washington* is: "The constitutional validity of an arrest without a warrant for a felony not committed in an officer's presence depends upon whether, at the moment the arrest is made, he had probable cause to make it." *Id.* at 183, 576 P.2d at 1128.

totally wrapped up in himself makes a small package," and then stated, "[i]n view of the State of Nevada, you are a very small package." Under these circumstances, however, we conclude that the prosecutor did not express his personal opinion on the matter. *See, e.g.,* Aesop v. State, 102 Nev. 316, 721 P.2d 379 (1986). Even assuming that the prosecutor's remarks constituted an improper expression of his personal opinion, as we have frequently noted, where, as here, a guilty verdict is "free from doubt, even aggravated prosecutorial remarks will not justify reversal." *See* Yates v. State, 103 Nev. 200, 206, 734 P.2d 1252, 1256 (1987). Here, however, the prosecutor's statement was neither aggravated misconduct, highly inflammatory nor prejudicial. Accordingly, appellant's contention is without merit.

Next, appellant argues that the prosecutor engaged in forensic misconduct by telling the jury during the penalty phase: "You possess the power to guarantee that Edward Bennett will never again make a healthy, vibrant, caring woman into a corpse." There was evidence in the record to support an inference of future dangerousness. The prosecutor's comment was not improper. *See* Haberstroh v. State, 105 Nev. 739, 782 P.2d 1343 (1989).

### The Penalty Phase

Appellant challenges the jury's use of robbery, burglary, and absence of apparent motive as aggravating circumstances. NRS 200.033. Appellant's contentions are meritless.

First, appellant contends that the district court erred by instructing the jury that it could find burglary as an aggravating circumstance pursuant to NRS 200.033(4).[5] Appellant specifically contends that, in order for burglary to be used as an aggravating circumstance, he should have been initially charged and convicted of burglary. However, the plain language of the statute does not require that the State first charge the defendant with each crime before the crimes can be used as an aggravating circumstance. Nor does appellant cite any relevant case law supporting this contention. A primary concern with respect to the

---

[5]NRS 200.033(4) provides in pertinent part that murder of the first degree may be aggravated where:

The murder was committed while the person was engaged, alone or with others, in the commission of or an attempt to commit or flight after committing or attempting to commit, any robbery, sexual assault, arson in the first degree, burglary or kidnapping in the first degree, and the person charged:
(a) Killed or attempted to kill the person murdered; or
(b) Knew or had reason to know that life would be taken or lethal force used.

finding of aggravating circumstances at the penalty hearing is to provide an accused notice and to insure due process so the accused can meet any new evidence which may be presented during the penalty hearing. *See* Deutscher v. State, 95 Nev. 669, 601 P.2d 407 (1979). Because the State notified appellant prior to the penalty hearing that burglary would be offered as an aggravating factor, the district court properly instructed the jury that it could consider it as such.

Next, appellant contends that burglary cannot be an aggravating circumstance here because the murder was not committed during the perpetration of the burglary. NRS 200.033(4) only requires that, for burglary to be an aggravating circumstance, the murder must be committed while the person was *engaged in the commission* of or an attempt to commit or flight after committing or attempting to commit burglary or robbery. This was clearly the case here.[6] Were it otherwise, burglary could be used as an aggravating circumstance only upon the rare occasion of a killing which occurs while the defendant is entering the building.

Appellant contends that the district court committed reversible error by considering the underlying felonies of robbery and burglary as separate aggravating circumstances under NRS 200.033(4). Appellant specifically argues that the burglary and robbery arose out of the same indistinguishable course of conduct and thus cannot be stated as two separate aggravating circumstances. We disagree.

Nevada law specifically authorizes prosecution for each crime committed during the commission of a burglary, as well as the burglary itself. NRS 205.070. Therefore, if a defendant can be prosecuted for each separately, each crime can be used separately as an aggravating circumstance. *Cf.* Jones v. State, 95 Nev. 613, 619, 600 P.2d 247, 251 (1979) (convictions of both burglary and robbery did not violate constitutional prohibition against double jeopardy because burglary and robbery are separate and distinct offenses). In addition, in Miranda v. State, 101 Nev. 562, 707 P.2d 1121 (1985), we held that the underlying felony in a felony-murder case does not merge with the murder conviction. There-

---

[6]NRS 205.060 defines burglary as:

(1) Every person who, either by day or night, enters any house, room, apartment, tenement, shop, warehouse, store, mill, barn, stable, outhouse, or other building, tent, vessel, vehicle, vehicle trailer, semitrailer or house-trailer, airplane, glider, boat or railroad car, with intent to commit grand or petit larceny, or any felony, is guilty of burglary.

fore, it is permissible for the State to use the underlying felony as an aggravating circumstance in the penalty phase. *See also* Petrocelli v. State, 101 Nev. 46, 692 P.2d 503 (1985); Wilson v. State, 99 Nev. 362, 376, 664 P.2d 328 (1983). Lastly, if the legislature intended to prohibit the use of multiple aggravating circumstances in this context it would have provided accordingly.

Appellant contends that in enacting NRS 200.033(4), the legislature was primarily concerned with imposing a penalty for the most heinous offenses, which is not the case here. Specifically, appellant argues that if a murder can be aggravated by mere technical offenses, NRS 200.033(4) would be overbroad and arbitrarily imposed. *See* Gregg v. Georgia, 428 U.S. 153, 199 (1976). This contention lacks merit.

First, appellant fails to provide evidence of legislative intent in support of this contention. We conclude, in any event, that both the burglary and attempted robbery made the crime more heinous.[7] Moreover, because Nevada statutory and case law specifically authorize the use of multiple underlying felonies as aggravating circumstances, the district court did not commit reversible error.

Appellant asserts that the evidence does not support a finding that he killed without an apparent motive. Specifically, appellant asserts that the jury's finding of guilt on the attempted robbery count is factually inconsistent with the jury's finding that the murder was committed without an apparent motive. We disagree.

We note that within 15 to 20 seconds after entering the Stop N'Go Market, appellant walked up to the counter, laid a piece of candy on it and, when Ms. Moore rang up the candy, fired a bullet through her head, killing her instantly. This killing was not necessary to accomplish burglary or robbery. We conclude, therefore, that under these circumstances, substantial evidence supports the jury's finding that appellant killed without an apparent motive, as well as the jury's finding that appellant committed attempted robbery. *See* Moran v. State, 103 Nev. 138, 143, 734 P.2d 712, 714 (1987).

---

[7]In Wilson v. State, 99 Nev. 362, 376, 664 P.2d 328, 336 (1983), we stated:

> A logical reading of the statute requires that each felony be used as an aggravating circumstance. First degree murder is aggravated when it is committed during the course of one of the enumerated felonies contained in NRS 200.033(4). Therefore, when the murder is committed during the course of more than one of the felonies listed, the murder is more aggravated and heinous than it would have been if only one of the felonies were present.

*Eighth Amendment Violation*

Appellant urges this court to declare Nevada's capital sentencing process unconstitutionally vague and overbroad, in violation of the Eighth Amendment prohibition against cruel and unusual punishment. Appellant specifically argues that NRS 200.033 and 200.030(4)(a) impermissibly transfer the burden of proving that the death penalty is inappropriate to the defendant. Appellant further contends that the sentencing procedure impermissibly creates a presumption in favor of the death penalty, which conflicts with Furman v. Georgia, 408 U.S. 238 (1972) and its progeny.

This court has repeatedly rejected these contentions, and has held that Nevada's sentencing procedure is constitutional. Gallego v. State, 101 Nev. 782, 711 P.2d 856 (1985); Snow v. State, 101 Nev. 439, 705 P.2d 632 (1985); Ybarra v. State, 100 Nev. 167, 679 P.2d 797 (1984).[8] Appellant has failed to demonstrate why we should depart from our established holdings.

Appellant claims that Nevada's death penalty is similar to the one struck down in Adamson v. Ricketts, 865 F.2d 1011 (9th Cir. 1988), where the court held the Arizona death penalty unconstitutional. The Arizona statute barred the court from imposing a sentence of less than death in situations where the mitigating and aggravating circumstances are in balance, or where the mitigating circumstances give the court reservations but nonetheless fall below the weight of the aggravating circumstances. *Id.* at 1043. However, Nevada's sentencing procedure is not the same. Unlike the Arizona statute, Nevada's statute does not require the jury to impose the death penalty under any circumstance, even when the aggravating circumstances outweigh the mitigating circumstances.[9] Nor is the defendant required to establish any mitigating

---

[8]In Profitt v. Florida, 428 U.S. 242 (1976), the United States Supreme Court considered a sentencing procedure similar to Nevada's where the sentencer weighs the aggravating and mitigating factors in imposing the sentence. The *Profitt* Court reasoned that it is this balancing process that causes the sentencer to focus on the circumstances of the crime and the character of the individual defendant, and to follow capital sentencing procedures which are designed to preclude imposition of the death penalty in an *arbitrary or capricious* manner. *Accord, Ybarra,* 100 Nev. at 175, 679 P.2d at 802. Moreover, Nevada, like Florida, guarantees against arbitrary death sentences by requiring this court to review the death sentence for arbitrariness. NRS 177.055(2).

[9]Instruction No. 6 states, in part:

The jury *may* impose a sentence of death only if it finds at least one aggravating circumstance has been established beyond a reasonable doubt and further finds that there are no mitigating circumstances sufficient to outweigh the aggravating circumstance or circumstances found.

(Emphasis added.) *See* NRS 200.030(4)(a).

circumstances in order to be sentenced to less than death. Thus, *Adamson* is distinguishable.

Our review of the record reveals that the sentence of death was not imposed under the influence of passion, prejudice, or any arbitrary factor. NRS 177.055(2)(c). Moreover, we conclude that appellant's sentence is not excessive, "considering both the crime and the defendant." NRS 177.055(2)(d). Accordingly, we affirm the judgment and sentence of the district court.