Steffen, J.,
concurring:
Although I have joined in the majority opinion, I considered it prudent to respond to our dissenting colleague since he has, for the first time, interjected an assignment of ambiguity to Nevada’s statutory scheme for the imposition of capital punishment. With due respect to our colleague, I suggest that he became enthralled with an acorn and thereafter lost himself among the dense leaves and branches of the great tree he had nurtured. The acorn was the willingness of a majority of this court to conclude, beyond a reasonable doubt, that the absence of an invalid aggravating circumstance pertaining to depravity of mind would not have caused the jury to reach a different sentencing verdict. Disenchanted with the majority’s “weighing” or “reweighing” of the evidence after accepting the invalidity of the depravity of mind aggravator, the tree became our colleague’s labrynthine construct for declaring Nevada’s capital sentencing statutes victim to an ambiguity virus.
Our colleague’s discovery of a “sequented, two-stage sentencing process” in our capital crime statutes is somewhat belated. In Gallego v. State, 101 Nev. 782, 711 P.2d 856 (1985), cert. denied, 479 U.S. 871 (1986), we said:
Under Nevada’s sentencing apparatus, the State is first required to prove one or more aggravating circumstances beyond a reasonable doubt. Thereafter, the defendant may show that the mitigating circumstances revealed by the evidence outweigh the aggravating circumstances proved by the State. Upon such a showing the death penalty is no longer among the sentencing options. See NRS 175.554(2) and (3).
The clearly defined, statutorily required, aggravating cir *884 cumstances that must be found to exist beyond a reasonable doubt serve to narrow and confine the class of persons against whom the death penalty may apply. Individuals who are identified as potential recipients of the death penalty because of conduct statutorily defined as an aggravating circumstance must then be scrutinized according to their individual characteristics. This process is facilitated by consideration of mitigating circumstances and other reliable factors relevant to the life of the defendant as a whole person. Only then may a sentencing authority render an informed judgment based upon the crime and the defendant who committed it.
If the death penalty option survives the balancing of aggravating and mitigating circumstances, Nevada law permits consideration by the sentencing panel of other evidence relevant to sentence. NRS 175.552. Whether such additional evidence will be admitted is a determination reposited in the sound discretion of the trial judge.
Id. at 790-91, 711 P.2d at 862-63 (emphasis added).
Unfortunately, our colleague has stumbled over the term “weighing” as if it were some sort of unusual, perhaps ritualistic exercise that results in the mandatory imposition of the death penalty. Capital trials, from start to finish, require the jury to weigh the State’s evidence against the defendant’s evidence and the criminal standard of proof beyond a reasonable doubt. And then, despite our colleague’s apprehensions to the contrary, the jury may return a non-capital sentence even if the weighing process leaves mitigating factors far short of aggravating factors. This court recently stated with plainness what this court has consistently declared with respect to Nevada’s capital sentencing statutes:
Recently, we . . . found that the word “may” is commonly understood by reasonable jurors as a permissive word that does not mandate a particular action. Riley v. State, 107 Nev. 205, 217, 808 P.2d 551, 558-59 (1991). Thus the jury was properly informed 'that the imposition of the death sentence was not compulsory, even if aggravating circumstances outweighed mitigating circumstances. Id[.]; see also Bennett v. State, 106 Nev. 135, 144, 787 P.2d 797, 803 (1990) (“Nevada’s statute does not require the jury to impose the death penalty under any circumstances, even when the aggravating circumstances outweigh the mitigating circumstances.”), cert. denied, 111 S.Ct. 307 (1991).
Dawson v. State, 108 Nev. 112, 118, 825 P.2d 593, 597 (1992), cert. denied, 113 S.Ct. 1286 (1993).
*885 It is thus seen that this court has consistently recognized the following, straightforward procedure in Nevada’s capital sentencing scheme:
1. The State is first required to prove, beyond a reasonable doubt, the existence of one or more statutorily-defined aggravating circumstances.
2. The defendant may demonstrate that mitigating circumstances outweigh their aggravating counterparts, thereby eliminating the death penalty as a sentencing option.
3. If the death penalty option survives steps (1) and (2), the jury remains at liberty to find, after considering all the evidence concerning the defendant, his background and the crime at issue, that the death penalty is not warranted.
To suggest that the above process somehow translates into something other than a weighing process is difficult to understand. Equally obscure is the thought that somehow the weighing process amounts to considerations of “blobs on a scale.” Simply stated, under Nevada law, once the State proves the existence of aggravating circumstances beyond a reasonable doubt (a weighing process for the jury), the jury must then weigh against those death-qualifying factors, all mitigating evidence that tends to disfavor a capital sentence. Whether the defendant is favored by the weighing process or not, the jury is free to return a sentence of life rather than death. I suppose what I am suggesting is that most of what our dissenting colleague now “proposes” has been specifically and consistently held by this court to be the law since the present statutory scheme was enacted.
Shorn of its makeweight, obfuscating argument concerning the extremely belated suggestion of ambiguity in Nevada’s capital sentencing statutes, the real burr under our colleague’s saddle is this court’s “re-weighing” of Canape’s sentence without the depravity of mind aggravator considered by the jury. Our colleague would prefer that we re-engage the jury machinery to determine Canape’s fate under proper instructions. Although I respect the dissent’s preference for a reconsideration or “re-weighing” by a jury, I suggest that there are entirely sound and fair reasons for not doing so.
The threshold issue is whether it is constitutionally permissible for this court to affirm Canape’s sentence after accepting the proposition that one of the four aggravating circumstances found by the jury is invalid. Justice Young’s analysis of this issue is cogent and need not be expanded. Only by way of emphasis do I repeat here what the United States Supreme Court held in Clemons v. Mississippi, 494 U.S. 738, 745 (1990):
Nothing in the Sixth Amendment as construed by our prior decisions indicates that a defendant’s right to a jury *886 trial would be infringed where an appellate court invalidates one of two or more aggravating circumstances found by the jury, but affirms the death sentence after itself finding that one or more valid remaining aggravating factors outweigh the mitigating evidence.
The Clemons ruling makes eminently good sense and clearly vindicates this court’s right to reweigh the effect of an invalid aggravating circumstance on Canape’s jury-imposed sentence of death.
The second of our colleague’s concerns, to which I ascribe total respect, is the capacity of this court, from the cold record, to reweigh or reassess the deliberations of the jury with one of the deliberative components missing, and reach a reliable conclusion. I readily admit at the outset that a reweighing by this court of a jury-imposed capital sentence should never be viewed as an automatic appellate prerogative. In close cases where the imposition of death is a questionably proper sanction given the individual characteristics and experience of the defendant and the circumstances of the capital offense, I would expect this court to vacate the penalty and remand for a new penalty hearing before a jury. Such is not the case here.
In reassessing Canape’s death-worthiness on appeal, I consider it somewhat revealing that the jury found, albeit without lawful foundation, that Canape exhibited:
[a] condition of mind described as depravity of mind . . . characterized by an inherent deficiency of moral sense and rectitude. It consists of evil, corrupt and perverted intent which is devoid of regard for human dignity and which is indifferent to human life. It is a state of mind outrageously, wantonly vile, horrible or inhuman.
Jury Instruction No. 8. Although the instruction should not have been given, it nevertheless reveals the jury’s view of the quality of Canape’s actions in killing his innocent victim. Certainly the prosecutor could have argued from the evidence that Canape’s crime reflected the depraved state of mind described in the instruction. I need not repeat in whole or in part the evidence of the offense detailed in Justice Young’s opinion. Absent was the drug deal gone sour or any motive for revenge. Canape’s crime encompassed the elements of a feigned good Samaritan who was planning and deliberating the murder of the victim he was pretending to succor. The culmination of Canape’s violent and calloused disregard for human life was vividly portrayed by the point blank shot to the head administered to his victim after having first shot him in the back.
*887 Given the fact that Canape provided the jury, and hence this court, with no mitigating evidence, and given the history and seriousness of Canape’s misdeeds and the grave circumstances of the instant oífense, I have no difficulty in concluding, beyond a reasonable doubt, that the jury would have returned the identical sentence if the depravity of mind instruction had never been given. The remaining three, valid aggravating circumstances amply serve as a solid, just and constitutional basis for this court affirming the penalty of death.
The word “weigh” means “to consider and choose carefully, to balance or ponder in the mind; consider in order to make a choice.” Webster’s New World Dictionary 1612 (2d ed. 1984). Nevada’s capital sentencing law clearly and intelligently directs the jury to weigh the evidence in arriving at a sentencing decision, despite thereafter giving the jury the right to ignore the evidence favoring death and impose a sentence of life. We are required to weigh a complex of factors to fulfill the responsibility enjoined upon us by statute to determine whether a capital defendant’s sentence is excessive considering both the crime and the defendant. In a very real sense, irrespective of the invalidity of one or more of several aggravating circumstances, we are required on appeal to reweigh essentially the same factors initially weighed by the jury. Apparently our colleague finds offense in the term “weigh” or “outweigh.” I frankly question whether any constitutional decision to impose death could result without the trier of fact weighing all of the alternative considerations bearing on the subject. The process by which an intelligent conclusion is reached in almost all of life’s decisions involves a weighing of alternatives. Every aspect of a trial, whether in the guilt or penalty phase, requires a weighing process that precedes and validates any interim or ultimate finding. And, as previously noted, a jury in Nevada, after thoroughly weighing all evidence and information, may simply discard the death-worthiness logic of any such weighing and shun the death penalty for any reason or no reason. The converse, however, is not true. Neither the jury nor this court may disregard a preponderance of mitigating factors to impose or affirm the death penalty.
I have written this concurrence only because I did not want to leave unanswered our colleague’s newly found aspect of ambiguity in our capital sentencing statutes. Indeed, our colleague has readily joined with others on the court in affirming numerous death penalty sentences, including Gallego and Dawson, quoted above, without divining ambiguity in our law. As observed above, despite our colleague’s exercise in semantics, I perceive nothing new or different in his analysis that would impact Nevada *888 law as interpreted by this court over the years. He would definitely prefer that we give no deference to Clemons, which is his right, and which, as I see it, is the real distillate of his dissent.
I both join and concur in the majority opinion affirming Canape’s sentence of death. Moreover, for reasons partially discussed above, I join the majority in the implicit determination that Nevada’s statutory scheme is neither ambiguous nor in any sense unconstitutional.