ALVARO CALAMBRO, Appellant, v. THE STATE OF NEVADA, Respondents.

No. 29121

January 22, 1998

952 P.2d 946

*Michael R. Specchio,* Public Defender and *John Reese Petty,* Chief Deputy Public Defender, Washoe County, for Appellant.

*Frankie Sue Del Papa,* Attorney General, Carson City; *Richard A. Gammick,* District Attorney and *Gary H. Hatlestad,* Deputy District Attorney, Washoe County, for Respondent.

## OPINION

By the Court, YOUNG, J.:

The underlying facts of this case are set forth in appellant's prior appeal, Calambro v. State, 111 Nev. 1015, 900 P.2d 340 (1995) ("*Calambro I*").[1]

---

[1] *Calambro I* addressed appellant's competence to waive his right to appeal the death sentence imposed for killing Peggy Crawford at the Reno U-Haul store in 1994. This appeal involves appellant's second death sentence for the killing of Keith Christopher the same night. The state proposes that this court

On January 3, 1994, appellant Alvaro Calambro and Duc Cong Huyhn robbed a Reno U-Haul store and murdered employees Peggy Crawford and Keith Christopher. Appellant and Duc then robbed a Reno gun store and fled to California, where they eventually led police on a high-speed chase down Interstate 5 and through downtown Los Angeles. The chase ended at the Los Angeles Hall of Records where appellant and Duc took a security guard hostage and held off police for nine hours. After they surrendered, appellant and Duc confessed to all the events, including the murders.

Appellant and Duc were convicted of twenty-eight felonies in California arising out of these events. They were then extradited to Reno to stand trial for the U-Haul murders. Appellant pleaded guilty to the murder of Crawford and was sentenced to death by a three-judge panel. At his sentencing hearing for the Crawford murder, appellant entered a guilty plea to the murder of Christopher. This court affirmed appellant's conviction and death sentence for the Crawford murder in *Calambro I*. A second three-judge panel thereafter sentenced appellant to receive the death penalty for the murder of Christopher. This appeal followed.

At the sentencing proceeding, the state alleged that six statutory aggravating circumstances supported the imposition of the death penalty:

> 1. Pursuant to NRS 200.033(2), the twenty-eight California felony convictions constituted previous felony convictions involving the use or threat of violence.
> 2. Pursuant to 200.033(4), the murders were committed during the course of a robbery.
> 3. Pursuant to NRS 200.033(9), the murders were committed at random and without apparent motive.
> 4. Pursuant to NRS 200.033(3), the murders created a risk of harm to other persons.
> 5. Pursuant to NRS 200.033(8), the murders involved torture, depravity of mind and mutilation.
> 6. Pursuant to NRS 200.033(5), the murders were committed to avoid lawful arrest.

Appellant asserted a continuing objection to all of the state's alleged aggravating circumstances. In accordance with NRS 200.035, appellant also proposed that three factors mitigated against imposition of the death penalty: (1) his youth; (2) his lack

---

consider as relevant, and even dispositive, the facts and analysis in *Calambro I*. We note, however, that the victim in this appeal is different, and different witnesses testified before a different sentencing panel. Although both appeals arose from the same underlying facts, we conclude that this appeal warrants our independent review.

of a prior criminal record; and (3) that he had acted under the domination and dominion of Duc.

On July 11, 1996, the three-judge sentencing panel entered a written judgment of conviction and sentence of death. The panel found that the evidence established the following aggravating sentencing factors:

> (1) sixteen aggravating circumstances under NRS 200.033(2) arising out of the twenty-eight California felony convictions;[2]
>
> (2) an aggravating circumstance under NRS 200.033(4) because the murder was committed during the course of a robbery;
>
> (3) an aggravating circumstance under NRS 200.033(8) because the murder involved depravity of mind and mutilation of the victim; and
>
> (4) an aggravating circumstance under NRS 200.033(9) because the murder was committed at random and without apparent motive.

The panel found only one mitigating circumstance, *i.e.*, appellant's lack of criminal history prior to the commission of the murder.[3] Lastly, the panel found that the aggravating factors outweighed any mitigating evidence. Accordingly, the panel sentenced appellant to receive the death penalty.

On appeal, appellant contends that the panel improperly found statutory aggravating circumstances arising out of the California felony convictions. He further contends that the panel improperly found that the murder involved depravity of mind and mutilation, and that the murder was committed at random and without apparent motive. Appellant raises no other issues on appeal.

## THE CALIFORNIA FELONY CONVICTIONS

Appellant contends the panel erred because the plain language of NRS 200.033(2) requires that a felony conviction must exist

---

[2]The panel announced from the bench that because of the similarity of the acts underlying the twenty-eight felony convictions, it treated the convictions as only 16 separate aggravating circumstances for purposes of weighing aggravating circumstances against mitigating circumstances.

[3]In announcing its decision from the bench, the panel expressly found appellant's lack of criminal history to be a mitigating circumstance pursuant to NRS 200.035(7), rather than NRS 200.035(1). Murder of the first degree may be mitigated under NRS 200.035(1) if "[t]he defendant has no significant history of prior criminal activity." Under NRS 200.035(7), first degree murder may be mitigated by "[a]ny other mitigating circumstance."

prior to the commission of the murder, not merely prior to the sentencing for the murder. Appellant emphasizes that he did not commit the felonies prior to committing the murder at issue in this case. Appellant's contention is without merit.

NRS 200.033(2) permits an aggravating circumstance to be found when "[t]he murder was committed by a person who was previously convicted . . . of a felony involving the use or threat of violence to the person of another." Interpreting this provision, this court has held:

> The statute was never intended to operate on the vagaries of conviction sequences. Instead, the focal point is the time of sentencing. The sentencing panel is entitled to consider all relevant aspects of the defendant's criminal background prior to rendering sentence. The fact that Gallego murdered two victims after killing the two victims in the instant case is not relevant to the dictates of the statute. The clear language of the statute required only that Gallego stood convicted of the California murders at the time of the introduction of that evidence in the penalty phase of the present proceeding. It would be both absurd and counterproductive for this court to construe the plain language of the statute so as to exclude convictions of murders or crimes of violence occurring after the primary offense but before the penalty phase of a defendant's trial. This we refuse to do.

Gallego v. State, 101 Nev. 782, 792-93, 711 P.2d 856, 863-64 (1985), *cert. denied,* 479 U.S. 871 (1986), *rev'd on other grounds,* Gallego v. McDaniel, 124 F.3d 1065 (9th Cir. 1997).[4] We decline appellant's invitation to revisit our holding in *Gallego,* and for the reasons stated in *Gallego,* we conclude that the panel properly found appellant's California convictions to be aggravating circumstances under NRS 200.033(2).

## DEPRAVITY OF MIND AND MUTILATION

Appellant next contends that the sentencing panel improperly

[4]The Ninth Circuit Court of Appeals concluded that a jury instruction given during the penalty phase of the trial which indicated that the Pardons Board had authority to commute a sentence of life without the possibility of parole to life with the possibility of parole was incorrect in view of Gallego's California death sentence. *See* NRS 213.1099(4) (prisoner whose sentence has been commuted from death or life without may not be paroled if under detainer to answer for a crime in another jurisdiction). Accordingly, the Ninth Circuit reversed that portion of the United States District Court's decision denying Gallego's federal petition for a writ of habeas corpus and remanded with instructions that the district court issue the writ unless the State of Nevada proceeds to resentence Gallego.

found that the murder involved depravity of mind and mutilation.[5] Appellant argues that the evidence does not support a finding that he acted with intent to cause pain and suffering for revenge, persuasion, or for a sadistic purpose. *See, e.g.,* Robins v. State, 106 Nev. 611, 627-28 n.4, 798 P.2d 558, 569 (1990) (approving jury instruction providing that essential elements of murder by *torture* are that acts causing death must involve a high probability of death and must have been committed "with intent to cause cruel pain and suffering for the purpose of revenge, persuasion or any sadistic purpose"), *cert. denied,* 499 U.S. 970 (1991); *see also* Domingues v. State, 112 Nev. 683, 702 n.6, 917 P.2d 1364, 1377 n.6 (1996) ("[t]orture involves a calculated intent to inflict pain for revenge, extortion, persuasion or for any sadistic purpose"), *cert. denied,* 519 U.S. 968, 117 S. Ct. 396 (1997).

We note, however, that the sentencing panel in this case found depravity of mind and mutilation, not depravity of mind and torture. In *Robins,* we construed NRS 200.033(8) to require "torture, *mutilation or other serious and depraved physical abuse beyond the act of killing itself,* as a qualifying requirement to an aggravating circumstance based in part upon depravity of mind." *Robins,* 106 Nev. at 629, 798 P.2d at 570 (emphasis added). Moreover, to the extent that appellant contends that there was no evidence of mutilation beyond the act of killing itself, we note that the record demonstrates abundant evidence supporting the aggravating sentencing factor of depravity of mind and mutilation beyond the act of killing itself.

More specifically, the evidence shows that appellant hog-tied the victim, bound his ankles to his wrists behind his back, gagged him by wrapping the lower half of his face in duct tape and smashed his head in blow by blow with a hammer. Appellant checked the victim repeatedly after each blow to see if he was still alive. The victim struggled hard against appellant, sustaining injuries to his wrists, hands, and legs as well as his face. With a two-handed motion, appellant began stabbing at the victim's skull with a pry bar. After driving the bar through the skull, appellant attempted to separate the victim's skull in half. Medical evidence revealed that the victim's skull had been broken apart by appellant's blows. Blood and pieces of brain matter were found on the walls and even the ceiling around the murder site.

Thus, substantial evidence supports the panel's finding that the

---

[5]The 1995 legislature amended NRS 200.033(8) by removing the term "depravity of mind." 1995 Nev. Stat. ch. 467 at 1490-91. The amendment does not apply to murders committed before October 1, 1995, and thus, does not apply in this case. As it applies to appellant, NRS 200.033(8) provided that an aggravating sentencing factor may be found if "[t]he murder involved torture, depravity of mind or the mutilation of the victim."

murder involved depravity of mind and mutilation. *See, e.g.,* Browne v. State, 113 Nev. 305, 933 P.2d 187 (1997) (blunt trauma which destroys the brain sufficient to support finding of mutilation); Wesley v. State, 112 Nev. 503, 916 P.2d 793 (1996) (depravity shown where the victim's skull was chipped by the stabbing); Parker v. State, 109 Nev. 383, 849 P.2d 1062 (1993) (sufficient evidence of mutilation and depravity of mind where defendant repeatedly smashed the victim's head with a rock, stabbed her once, post-mortem, and wrapped cords around her neck). Appellant's contention is without merit.

## MURDER AT RANDOM AND WITHOUT APPARENT MOTIVE

Appellant next contends that the panel's findings that the murder was committed during the course of a robbery and that it was random and without apparent motive are mutually inconsistent. This court has held, however, that "[a] killing may properly be found to be random and without apparent motive if the robbery could have been completed without killing the victim." Paine v. State, 107 Nev. 998, 999, 823 P.2d 281, 282 (1991). *See also* Bennett v. State, 106 Nev. 135, 143, 787 P.2d 797, 802 (1990), *cert. denied,* 498 U.S. 925 (1990); Lane v. State, 110 Nev. 1156, 1167, 881 P.2d 1358, 1366 (1994), *cert. dismissed,* 514 U.S. 1058, 115 S. Ct. 1444 (1995). Here, the robbery was completed by the time appellant began killing. There was no legal inconsistency in the panel's finding both aggravating sentencing factors.

Appellant also argues that the terms "random" and "without apparent motive" are ambiguous. He asserts that the terms do not provide "clear and objective standards" and "specific and detailed guidance" to the sentencer. Therefore, appellant argues, the terms do not sufficiently narrow the class of persons eligible for the death penalty. *See* Godfrey v. Georgia, 446 U.S. 420, 428 (1980). This court has considered this issue and concluded that the aggravator is constitutional under the relevant United States Supreme Court case law. Greene v. State, 113 Nev. 157, 172-73, 931 P.2d 54, 63-64 (1997) (rehearing pending); *see also* Deutscher v. State, 95 Nev. 669, 676, 601 P.2d 407, 412 (1979), *vacated on other grounds,* Angelone v. Deutscher, 500 U.S. 901 (1991) (holding that Nevada's death penalty statutes withstand constitutional scrutiny); Ybarra v. State, 100 Nev. 167, 174-75, 679 P.2d 792, 801-02 (1984).

In addition, appellant argues that the "without apparent

motive" element unconstitutionally shifts the burden to the defendant of proving a motive in order to disprove a death-eligibility element which the state is required to prove. Therefore, appellant contends, the element violates the defendant's Fifth Amendment rights against self-incrimination. We disagree. The burden of proof was not unconstitutionally shifted in this case; the state at all times retained the burden of proving the aggravator beyond a reasonable doubt. Moreover, we have held that this sentencing aggravator does not offend the Fifth Amendment. *See, e.g., Greene,* 113 Nev. at 172-73, 931 P.2d at 63-64; *see also* Colwell v. State, 112 Nev. 807, 919 P.2d 403, 407-08 (1996) (holding that Nevada's death penalty statute is essentially identical to the Georgia and Florida death penalty statutes upheld as facially constitutional by the United States Supreme Court).

We further note that the panel's finding of the random and motiveless aggravator is consistent with previous holdings of this court. In *Paine,* for example, Paine and his partner entered a cab. Upon arriving at their destination, Paine suddenly shot the cab driver twice in the head, and then robbed the victim of $45.00 and a wristwatch. This court concluded that the sentencing panel did not err in finding that Paine acted randomly and without apparent motive because there was sufficient evidence to conclude that the killing was not necessary to complete the robbery. *Paine,* 107 Nev. at 999-1000, 823 P.2d at 281. In *Bennett,* the defendant entered a mini-mart shop and without warning or reason, shot the clerk in the head. *Bennett,* 106 Nev. at 137-38, 787 P.2d at 798. In Moran v. State, 103 Nev. 138, 143, 734 P.2d 712, 714 (1987), the defendant testified that he had no idea why he shot the victims.

In this case, although appellant knew that Duc blamed Crawford for losing his job, appellant had no prior relationship with Christopher. Appellant had no reason to care about Christopher or to be angry with him, and he did not take any of the robbery money. Appellant's decision to kill appears to have been his own, and was spontaneous and for no specific reason. Moreover, Christopher did not interfere with the robbery. *Cf.* Geary v. State, 112 Nev. 1434, 930 P.2d 719 (1996) (random and without apparent motive instruction held to be improper due to evidence that the killing was directed at a specific individual for a reason such as anger, jealousy or money) (*reh'g granted on other grounds,* Geary v. State, 114 Nev. 100, 952 P.2d 431 (1998). Accordingly, we conclude that the sentencing panel properly applied the random and motiveless aggravating sentencing factor, and we decline to revisit our prior holdings on these issues.

NRS 177.055(2) requires this court to review the sentence on the record and to consider:

> (a) Any errors enumerated by way of appeal;
> (b) Whether the evidence supports the finding of an aggravating circumstance or circumstances;
> (c) Whether the sentence of death was imposed under the influence of passion, prejudice or any arbitrary factor; and
> (d) Whether the sentence of death is excessive, considering both the crime and the defendant.

*See* Parker v. State, 109 Nev. 383, 392, 849 P.2d 1062, 1068 (1993). Our review of the record reveals sufficient evidence to support all of the panel's findings of aggravating circumstances. The panel accepted only one mitigating factor: that appellant had no criminal record prior to the commission of the murder. We conclude that the panel did not err in balancing the aggravating circumstances with the mitigating evidence and in finding that the former outweighed the latter.

We further conclude that the sentence was not imposed under the influence of passion, prejudice or any arbitrary factors, and that the sentence of death is not excessive considering both the crime and the appellant. Accordingly, we affirm the judgment of conviction and sentence.

SHEARING and MAUPIN, JJ., concur.

SPRINGER, C. J., concurring:

I concur in the result reached by the majority but write separately to comment on the mutilation aspect of the opinion. I do this because in many of the cases decided by the court, murder involving "mutilation of the victims" has incorrectly become "murder accompanied by great damage to the victim's body." Thus, where two stab wounds may not be mutilation, ten wounds probably would be, because of the damage done to the body by so many wounds. A pistol shot to the head probably would not be seen as mutilation, whereas, a shotgun blast to the head probably would. I pointed out in my dissent in Browne v. State, 113 Nev. 305, 933 P.2d 187 (1997) (SPRINGER, J., dissenting), that the essence of the mutilation aggravator is not disfigurement alone resulting from the killing act itself but, rather, the murderer's *intent* to mutilate (maim) in addition to intending to kill his victim.

This is a *real* mutilation case. The testimony is that Calambro "plunged a pry bar through . . . the skull" and "attempted to separate Keith Christopher's skull, the halves of the skull." Thus,

in the present case, the jury was certainly entitled to conclude that Calambro had a " 'specific intent' to mutilate." *Browne,* 113 Nev. at 322, 933 P.2d at 197 (SPRINGER, J., dissenting) (quoting Domingues v. State, 112 Nev. 683, 696, 917 P.2d 1364, 1377 (1996)). The present case is an example of true mutilation and clearly distinguishable from the *Browne* case, in which the appellant inflicted a number of blows to the head in the process of killing his victim.

I note that Calambro inflicted a number of blows to his victim's head with a hammer. As put in the majority opinion, while assaulting his victim, Calambro "checked the victim repeatedly after each blow to see if he was still alive." The majority opinion appears to view the extensive head injuries resulting from the hammer blows as mutilation. I do not. That Calambro kept checking to see if his victim was dead tells me that he was *killing,* not *mutilating.* Much different is Calambro's separating the skull of his victim into two parts. These acts show me that Calambro had "in addition to having the intention to kill, . . . the added specific intention to mutilate and [did] in fact mutilate the murder victim." *Browne,* 113 Nev. at 322, 933 P.2d at 198 (SPRINGER, J., dissenting).

In addition, for the reasons discussed in Nika v. State, 113 Nev. 1424, 951 P.2d 1047 (1997) (SPRINGER, J., dissenting), I disagree with the majority that the evidence supports a finding that the murder was "at random and without apparent motive." This case is an even stronger example of the misapplication of this aggravating circumstance. First, there was nothing random or indiscriminate about this killing. Calambro confessed to the police that, on the night of the murders, he anticipated killing Christopher before he (Calambro) entered the U-Haul facility. Thus, contrary to the majority's assertions, the killing was not random but planned.

Second, there are at least two "apparent" motives for the killing. The majority believes that there were no "apparent" motives for the murders because Calambro "had no reason to . . . be angry with" Christopher and because Calambro "did not take any of the robbery money." Clearly, robbery was at least one "apparent" motive for the killing, whether it was Calambro or Duc who physically took the money.[1] Another "apparent" motive is revenge. Duc had been fired as a U-Haul employee after an altercation with Crawford. It is reasonable to conclude that Calambro was angry with Christopher because Christopher was a U-Haul employee or because he was working alongside

---

[1]It is difficult for me to understand how the majority can uphold robbery as an aggravating circumstance and at the same time say that robbery was not a motive.

Crawford, and that Calambro killed Christopher to avenge Duc's being fired.

No evidence exists that this killing was either at random or without apparent motive, much less both. Therefore, I would hold that the finding of this aggravating circumstance is invalid.

Given the nature of this murder and the clear presence of at least two aggravating circumstances, I would affirm the death penalty judgment because the remaining aggravating circumstances, previous felony convictions and murder committed during the course of a robbery, so clearly outweigh the mitigating circumstances in this case. *See* Leslie v. State, 114 Nev. 8, 952 P.2d 966 (1998) (SPRINGER, J., concurring).

ROSE, J., concurring:

I concur in affirming the first degree murder conviction and the imposition of the death penalty. However, I have serious doubts whether the legislature intended the "random and without apparent motive" aggravator to be applicable to the facts of these vicious killings and whether this aggravator was proven beyond a reasonable doubt. These cold-blooded murders were committed in the course of a robbery and the "random and without apparent motive" aggravator should not be used as a catchall phrase to back up other more specific aggravators. Notwithstanding, the additional aggravators found are based on abundant evidence and clearly support the punishment assessed. Accordingly, the death penalty was properly imposed, even without considering the random and without apparent motive aggravator.