*1437
 
 OPINION ON REHEARING
 

 Per Curiam:
 

 Appellant Melvin Joseph Geary was first convicted of first-degree murder twenty years ago. Geary v. State, 91 Nev. 784, 544 P.2d 417 (1975). Geary was on parole from the sentence imposed in that case when he committed another murder. For this second murder, Geary was convicted of one count of first-degree murder and was sentenced to death. On direct appeal, this court affirmed Geary’s conviction and sentence. Geary v. State, 110 Nev. 261, 871 P.2d 927 (1994). Geary petitioned this court for rehearing, arguing that error occurred at both the guilt and penalty phases of his trial. In an order entered on September 29, 1994, we granted Geary’s petition for rehearing, and directed the parties to submit supplemental briefs. Having considered the briefs on rehearing, we agree that error occurred at the penalty phase of Geary’s trial. Accordingly, we vacate the sentence and remand this case for a new penalty hearing.
 
 [1]
 

 FACTS
 

 In July 1992, shortly after committing the crime, Geary confessed to murdering his roommate Edward Colvin with a boning knife. Geary had been drinking at the time. Following a trial, a jury found Geary guilty of one count of first-degree murder with use of a deadly weapon.
 

 Geary had previously confessed to murdering another person in a similar manner in 1973. For that earlier murder, a jury found Geary guilty of one count of first-degree murder and sentenced him to life in prison without the possibility of parole. This court affirmed his conviction. Geary v. State, 91 Nev. 784, 544 P.2d 417 (1975)
 
 (Geary
 
 I). In 1980, the Pardons Board commuted Geary’s sentence to a sentence of life with the possibility of parole. After several appearances before the Parole Board, Geary was released on parole in 1986, in large part because he was an exemplary prisoner who received commendations for his service to the prison and the community. One of the conditions of Geary’s parole was that he abstain from alcohol. Geary violated this condition of his parole several times, and on one occasion was found to have a blood alcohol level of 0.427.
 

 
 *1438
 
 Geary was on parole from the previous murder when he killed Colvin. At the penalty hearing for Colvin’s murder, the jury was fully informed of the facts and circumstances surrounding Geary’s previous conviction, commutation and parole. After the penalty hearing, the jury found the following three aggravating circumstances: (1) that Geary committed the murder while under sentence of imprisonment (i.e., parole) for the 1973 murder; (2) that Geary was previously convicted of another murder (the 1973 murder) in Nevada; and (3) that the murder was committed at random and without apparent motive. The jury found that “any mitigating circumstances do not outweigh the aggravating circumstance^) ” and imposed the death penalty.
 

 Geary appealed, arguing that: (1) the district court should have excluded his confessions because they were involuntary; (2) the district court gave an improper state-of-mind instruction; (3) the penalty-phase verdict was impermissibly tainted by juror misconduct; and (4) the district court allowed the jury to consider duplicative aggravating circumstances at the penalty phase. This court affirmed the conviction and sentence in a per curiam opinion. Geary v. State, 110 Nev. 261, 871 P.2d 927 (1994)
 
 (Geary II).
 
 In that opinion, this court rejected each of these contentions, and conducted a
 
 sua sponte
 
 review of the penalty phase instructions and of the sentence, finding both to be proper.
 

 Following our affirmance, Geary petitioned for rehearing. We granted rehearing and ordered additional briefing on the issues raised in Geary’s petition, as well as on two jury instructions.
 

 DISCUSSION
 

 On rehearing, Geary contends that error occurred at both the guilt and penalty phases of his trial. Concerning guilt phase error, Geary contends that his rights to due process and to a reliable verdict were violated. Concerning penalty phase error, Geary contends that: (1) the jury instruction regarding the possibility of commutation of his sentence was misleading and violated his constitutional rights to due process and a reliable sentence; (2) the “random and without apparent motive” aggravating circumstance violated his rights to due process, to a reliable sentence, and to not incriminate himself; (3) the two aggravating circumstances based on his prior conviction and on his being under sentence of imprisonment for the same conviction violated the prohibition against double jeopardy and deprived him of due process and a reliable sentence; and (4) constitutional defects in other penalty phase instructions require reversal of his sentence.
 

 Guilt Phase Instructions
 

 Geary does not concede that this court’s disposition of the
 
 *1439
 
 issues raised on appeal was proper, nor does he concede that there are no other issues which require reversal. Geary argues that his rights to due process and to a reliable verdict were violated by: (1) the jury instruction which defined a reasonable doubt as one which would “control” a person’s behavior; (2) the jury instruction on premeditation and deliberation which conflated first and second degree murder because it defined premeditation as an intent to kill which can be formed at or instantaneously before the killing; and (3) the finding that he used a deadly weapon based on the use of a boning knife.
 

 Although these issues exceed the scope of this court’s order granting rehearing, we have elected to consider them nonetheless. We disagree with Geary’s contentions. The jury instruction on reasonable doubt is a stock instruction, identical to that given in Lord v. State, 107 Nev. 28, 806 P.2d 548 (1991), where we upheld the instruction. Since
 
 Lord,
 
 we have consistently held that the instruction is constitutionally sound.
 
 See
 
 Wesley v. State, 112 Nev. 503, 916 P.2d 793 (1996); Canape v. State, 109 Nev. 864, 859 P.2d 1023 (1993),
 
 cert. denied,
 
 115 S. Ct. 176 (1994). We also previously upheld the jury instruction pertaining to premeditation in Kazalyn v. State, 108 Nev. 67, 825 P.2d 578 (1992). Further, with regard to Geary’s use of a deadly weapon, a boning knife qualifies as a deadly weapon even under the “inherently dangerous” weapon test of Zgombic v. State, 106 Nev. 571, 798 P.2d 548 (1990).
 
 See
 
 Hutchins v. State, 110 Nev. 103, 867 P.2d 1136 (1994) (distinguishing scissors from knives, which fall within the definition of a deadly weapon). Thus, we conclude that these contentions are without merit.
 

 Penalty Phase Instructions
 

 1. Commutation Instruction
 

 Concerning the possibility that Geary’s sentence could later be modified, the jury was instructed as follows:
 

 Life imprisonment with the possibility of parole is a sentence to life imprisonment which provides that the Defendant would be eligible for parole after a period of twenty years. This does not mean that he would be paroled after twenty years, but only that he would be eligible after that period of time.
 

 Life imprisonment without the possibility of parole means exactly what it says, that the Defendant shall not be eligible for parole.
 

 If you sentence the Defendant to death you must assume that the sentence will be carried out.
 

 
 *1440
 

 Although under certain circumstances and conditions the State Board of Pardons Commissioners has the power to modify sentences, you are instructed that you may not speculate as to whether the sentence you impose may be changed at a later date.
 

 (Emphasis added.) Geary argues that, under the circumstances of this case, the instruction was misleading and violated his constitutional rights.
 

 Before addressing the merits of this issue, we address the state’s argument that this issue is waived because Geary did not object at the sentencing hearing. Normally, failure to object at trial bars review on appeal. Emmons v. State, 107 Nev. 53, 61, 807 P.2d 718, 723 (1991) (citing McCullough v. State, 99 Nev. 72,74, 657 P.2d 1157, 1158 (1983)). However, on direct appeal from a death sentence, this court’s greatest concern is whether the sentence is constitutional. Under compelling circumstances, we have at times allowed this concern to override procedural problems in capital cases.
 
 See, e.g., Lord,
 
 107 Nev. at 38, 806 P.2d at 554 (constitutional error addressed despite failure to object to jury instruction in trial court); Jones v. State, 101 Nev. 573, 580, 707 P.2d 1128, 1133 (1985) (fundamental instructional error not raised below addressed
 
 sua sponte
 
 by this court on appeal). Thus, we address the merits of appellant’s contention.
 

 Appellant contends that, under the unique circumstances of this case, the jury instruction regarding the possibility of commuting a sentence from life without, to life with the possibility of parole was misleading, prejudicial, and violated his constitutional rights to due process and a reliable sentence. Specifically, Geary contends that the jury was misled into believing that if it sentenced him to life without the possibility of parole, his sentence could be modified, when in fact, his sentence could not be modified to allow for parole.
 

 First, we note that this instruction complies with our dictate in Petrocelli v. State, 101 Nev. 46, 692 P.2d 503 (1985). In
 
 Petrocelli,
 
 we expressed concern that juries were instructed differently regarding the possibility of commutation or parole, and stated that some of those instructions have “by commission or omission, not been totally accurate or suitable.”
 
 Id.
 
 at 56, 692 P.2d at 510. To remedy this problem, we ordered that the jury instruction set forth in our
 
 Petrocelli
 
 opinion, if requested, must be given.
 
 Id.
 
 at 56, 692 P.2d at 511.
 

 After reviewing the controlling statute, NRS 213.1099(4), we conclude that, under the unique circumstances of this case, the
 
 *1441
 
 instruction was unconstitutional because Geary simply would not qualify for parole. At the time that Geary was convicted, NRS 213.1099(4) provided that:
 

 [e]xcept as otherwise provided in NRS 213.1215, the [parole] board may not release on parole a prisoner whose sentence to death or to life without possibility of parole has been commuted to a lesser penalty unless it finds that the prisoner has served at least 20 consecutive years in the state prison, is not under an order that he be detained to answer for a crime or violation of parole or probation in another jurisdiction, and that he has no history of:
 

 (a) Recent misconduct in the institution, and that he has been recommended for parole by the director of the department of prisons;
 

 (b) Repetitive criminal conduct;
 

 (c) Criminal conduct related to the use of alcohol or drugs;
 

 (d) Repetitive sexual deviance, violence or aggression; or
 

 (e) Failure in parole, probation, work release or similar programs.
 

 Even if the Pardons Board were to commute Geary’s sentence, his case for parole falters on as many as four of the five criteria set forth in NRS 213.1099(4). Having committed two first-degree murders, both while drunk and one while on parole from the other, Geary has clearly demonstrated a history of criminal conduct related to the use of alcohol as well as failure in parole. NRS 213.1099(4)(c), (e). His conduct may also demonstrate repetitive criminal conduct as well as repetitive violence or aggression. NRS 213.1099(4)(b), (d). Given these factors, Geary would most likely not be eligible for parole even if his sentence were commuted to life with the possibility of parole.
 

 We find Simmons v. South Carolina, 512 U.S. 154, 114 S. Ct. 2187 (1994), instructive in analyzing this issue. In
 
 Simmons,
 
 a capital case decided after
 
 Geary II,
 
 a state trial court refused to instruct the jury, and precluded defense counsel from arguing during the penalty phase, that the defendant would be ineligible for parole under state law. A plurality of the High Court concluded that, when the defendant’s fhture dangerousness is at issue, and state law prohibits the defendant’s release on parole, due process requires that the sentencing jury be informed that the defendant will not be eligible for parole.
 
 Id.
 
 at 161-62, 114 S. Ct. at 2192-93. The Court stated:
 

 In this case, the jury reasonably may have believed that petitioner could be released on parole if he were not executed. To the extent this misunderstanding pervaded the
 
 *1442
 
 jury’s deliberations, it had the effect of creating a false choice between sentencing petitioner to death and sentencing him to a limited period of incarceration. This grievous misperception was encouraged by the trial court’s refusal to provide the jury with accurate information regarding petitioner’s parole ineligibility, and by the State’s repeated suggestion that petitioner would pose a future danger to society if he were not executed.
 

 Id.
 
 at 161-62, 114 S. Ct. at 2193. The Court continued: “Because truthful information of parole ineligibility allows the defendant to ‘deny or explain’ the showing of future dangerousness, due process plainly requires that he be allowed to bring it to the jury’s attention by way of argument by defense counsel or an instruction from the court.”
 
 Id.
 
 at 169, 114 S. Ct. at 2196. The Court was divided on whether defense argument was enough or whether an instruction was required.
 

 In this case, even though Geary could not qualify for parole, counsel for both sides based their arguments on a presumption that he
 
 could
 
 qualify for parole. Geary was previously sentenced to life without the possibility of parole, and had his sentence commuted to a term of life with the possibility of parole by the Pardons Board. Thereafter, Geary was in fact released on parole. Because these facts were so heavily emphasized before the jury, the jury may have speculated that a sentence of death was the only way to prevent Geary’s eventual release from prison. This case presents an atypical factual scenario and procedural history which warranted informing the jury that even if the Pardons Board commuted Geary’s sentence from one without the possibility of parole to one with the possibility of parole, Geary could not, in fact, be released on parole.
 

 Defense counsel sought to have the jury instructed regarding the function of the Pardons Board and the process for obtaining a pardon or parole. The district court properly rejected these instructions pursuant to the dictates of
 
 Petrocelli.
 
 Defense counsel did not, however, propose any jury instructions concerning NRS 213.1099(4). Indeed, defense counsel was seemingly unaware of the statutory prohibition against Geary’s future release on parole, because counsel suggested to the jury that by the time Geary became eligible for parole, he would be so old and in such poor health that he probably would not live that long. Defense counsel merely argued that there was “no chance” that Geary would get out of prison again because the “politicians and the bureaucrats . . . made fools of themselves in 1980 . . . [and that] even the most irresponsible politician or bureaucrat would summarily dismiss any concept of this man getting out again.” By contrast, the state emphasized Geary’s future dangerousness:
 

 
 *1443
 
 There comes a time when you say, “Enough is enough.” This man has been given every single break that could possibly happen.
 

 A jury of twelve sentenced him to life without the possibility, just like you folks. 1980, that was commuted to life with. . . . [t]he system let him out after six or seven parole hearings. Convinced, convinced that this man would not be in trouble in the future. Unfortunately for Ted Colvin, they were wrong.
 

 There are times when you say, “We have to punish.”
 

 Send him back to prison for a life term so he can live the kind of lifestyle he was living. Working at what he wants to work at. Going out from prison to give speeches and lectures. Sounded like at times he was doing just about what he wanted to do.
 

 This man is a walking time bomb, a walking volcano, and who is to say he can’t cause problems at the prison? You heard testimony today about pruno being available there, alcohol. Is he going to take one more drink and kill someone else?
 

 I will ask you: Can society take that risk?
 

 The jury instruction suggesting that Geary’s sentence could be modified, combined with the arguments of counsel, may have misled the jury into believing that it had to choose death in order to prevent Geary from being paroled and released back into society. The jury most likely was confused, because the prosecutor’s primary focus during the penalty phase was Geary’s future dangerousness based on his previous murder conviction for which, despite his sentence of life without the possibility of parole, he was in fact paroled. Defense counsel greatly exacerbated the problem by failing to argue that Geary could not be paroled, despite the statutory prohibition against his parole. Given this, we conclude that the instruction was constitutionally impermissible, and was therefore given in error.
 

 Further, we conclude that this error was prejudicial. In Jones v. State, 101 Nev. 573, 707 P.2d 1128 (1985), the prosecutor, in his closing remarks, elaborated on jury instructions regarding the possibility of a pardon or parole, stating that even with a term of life without the possibility of parole, there was always a possibility of executive clemency and parole. Thus, the prosecutor urged the jury to impose a death sentence to ensure that the defendant would not be released.
 
 Id.
 
 at 580-81, 707 P.2d at 1133. We
 
 *1444
 
 concluded that the jury was misled and that the death sentence may well have been imposed arbitrarily and under the influence of passion because of the misleading statements regarding executive clemency and a death sentence.
 
 Id.
 
 at 581-82, 707 P.2d at 1133-34. Accordingly, we vacated the death sentence and remanded for a new penalty hearing.
 
 Id.
 
 at 582, 707 P.2d at 1134.
 

 In light of the fact that extensive mitigating evidence was presented at the penalty hearing and Geary’s sentence had, once before, been commuted to a term of life with parole, the jury may have believed that the possibility of commutation or parole was indeed great. Consequently, the jury was free to erroneously speculate that Geary was likely to be released on parole even if it sentenced him to a term of life without the possibility of parole. Thus, the jury was presented with a “false choice,” and, operating under this “grievous misperception,” rendered a sentence which cannot be said to be constitutionally reliable. The error was prejudicial, and
 
 Jones
 
 mandates reversal on this issue.
 

 On remand, to avoid the problem created by giving the jury the
 
 Petrocelli
 
 instruction in this case, the following instruction may be given when requested by either the defendant or the state:
 

 1. Life imprisonment with the possibility of parole is a sentence to life imprisonment which provides that the Defendant would be eligible for parole after a period of twenty years. This does not mean that he would be paroled after twenty years, but only that he would be eligible after that period of time.
 

 2. Life imprisonment without the possibility of parole means exactly what it says, that the Defendant shall not be eligible for parole.
 

 3. If you sentence the Defendant to death you must assume that the sentence will be carried out.
 

 4. Although under some limited circumstances and conditions the State Board of Pardons Commissioners has the power to modify certain sentences, the law does not allow the Board to change either a death sentence or a sentence of life without the possibility of parole to any lesser or different sentence. Therefore, you are instructed that you may not speculate as to whether the sentence you impose may be changed at a later date.
 

 See
 
 Sonner v. State, 112 Nev. 1328, 930 P.2d 707 (1996) (modifying last paragraph of
 
 Petrocelli
 
 instruction to comport with NRS 213.085).
 

 
 *1445
 
 2.
 
 Aggravating circumstances
 

 a. “Random and motiveless”
 

 The third aggravating circumstance on which the jury was instructed at the penalty phase was the following:
 

 3. The murder was committed upon one or more persons at random and without apparent motive.
 

 NRS 200.033(9). The jury premised its imposition of the death sentence in part on the finding that this aggravating circumstance existed.
 

 Geary challenges this aggravating circumstance on constitutional grounds. He argues that this aggravating circumstance impermissibly shifts the burden of proof to the defendant to prove the existence of a motive in order to avoid having the jury find the aggravating circumstance, and that it violates his constitutional right not to incriminate himself. Geary further argues that this aggravator violates his rights against cruel and unusual punishment and to substantive due process because it fails to perform the constitutionally mandated narrowing function and does not rationally support an increase in the level of culpability. In addition, Geary argues that the aggravator violates the Eighth and Fourteenth Amendments because it is unconstitutionally vague on its face and as applied.
 

 Geary also contends that the evidence was insufficient to support a finding of this aggravating circumstance. He argues that the state’s evidence presented during the guilt phase demonstrated that the killing was not random or motiveless and that the position the state took in the penalty phase and on appeal directly contradicts the position it took during the guilt phase. He argues that interpreting NRS 200.033(9) to include this killing violates basic rules of statutory construction and is contrary to the plain meaning of the statute. Examining the legislative history and judicial interpretation of the statute, he asserts that this aggravating circumstance was intended by the legislature to cover “thrill killings” yet has been applied broadly by this court to apply to any “unnecessary” killing, thus depriving the statute of any rational meaning.
 

 Geary further contends that he was prejudiced by this error. He challenges the propriety of appellate reweighing and asserts that the error was not harmless beyond a reasonable doubt. He points to the other problems presented by this case, as well as to the evidence in mitigation, to support his claim.
 

 We disagree with Geary’s contention that the “random and
 
 *1446
 
 motiveless” aggravating circumstance is unconstitutionally vague on its face. Although the jury was given no definitions to guide it in applying this aggravating circumstance, we conclude that the word “random” is not so vague that the jury did not understand it.
 
 Cf.
 
 Godfrey v. Georgia, 446 U.S. 420 (1980) (death penalty conviction overturned where jury given no narrowing instructions to guide its application of bare statutory terms which were unconstitutionally vague); Pertgen v. State, 110 Nev. 554, 875 P.2d 361 (1994) (depravity of mind and torture aggravating circumstance held unconstitutional where jury not instructed regarding definition or significance of key terms).
 

 We conclude, however, that this aggravating circumstance was applied unconstitutionally broadly to the facts of this case. This case is distinguishable from previous cases in which we upheld the “random and motiveless” aggravating circumstance; in this case Geary knew and lived with his victim and expressed resentment of him. Geary had moved in with Colvin because Geary was unemployed, homeless, and had no money. Because there were no eyewitnesses and Geary did not testify, we cannot ascertain the exact circumstances of the murder. Nevertheless, evidence adduced at trial suggests that the murder was neither random nor motiveless. Although the state argued that the killing was random because Geary “went oif like a volcano” whenever he drank, and would kill anyone who happened to be there, the evidence indicates that Geary killed Colvin because Colvin was “taunting” him. Geary was “pissed off” because Colvin, who was characterized as outspoken and belittling, “had it all, and I had nothing.” Geary told his ex-girlfriend that he had been in a fight, and Colvin had defensive wounds, suggesting that there was a struggle in which Colvin resisted. Geary also told police officers that he had taken money from Colvin. This evidence suggests that the killing was directed at a specific individual (Colvin) and was for a reason (anger, jealousy, money). Thus, this killing is not the type of “random and motiveless” crime at which our death penalty statutes are directed.
 

 By contrast, in previous cases upholding the “random and motiveless” aggravating circumstance, the defendant had no apparent history, prior relationship or personal involvement with the victim.
 
 See, e.g.,
 
 Lane v. State, 110 Nev. 1156, 1159, 881 P.2d 1358, 1361 (1994) (defendant on “spree of violence” shot cab driver in the head and took his money),
 
 cert. dismissed,
 
 115 S. Ct. 1444 (1995); Paine v. State, 107 Nev. 998, 999-1000, 823 P.2d 281, 281 (1991) (defendant shot cab driver twice in head before robbing him); Bennett v. State, 106 Nev. 135, 137-38, 787 P.2d 797, 798 (defendant on “killing spree” shot mini-mart clerk
 
 *1447
 
 in face before even speaking to her),
 
 cert. denied,
 
 498 U.S. 925 (1990); Moran v. State, 103 Nev. 138, 142-43, 734 P.2d 712, 714-15 (1987) (before robbing bar, defendant killed bartender and patron without warning and had no idea why he had killed them); Ford v. State, 102 Nev. 126, 127-28, 717 P.2d 27, 28 (1986) (defendant drove car onto crowded city sidewalk, killing seven and injuring many others).
 

 b. Other aggravating circumstances
 

 In addition to the aggravating circumstance discussed above, the jury found the following two aggravating circumstances based on Geary’s previous murder conviction:
 

 1. The murder of EDWARD COLVIN was committed by defendant MELVIN JOSEPH GEARY while he was under sentence of imprisonment in that defendant MELVIN JOSEPH GEARY was on parole from the Nevada State Prison.
 

 2. The murder of EDWARD COLVIN was committed by defendant MELVIN JOSEPH GEARY who was previously convicted of another murder in 1974 in the State of Nevada.
 

 These aggravating circumstances are based upon NRS 200.033(1) and (2), which provide that first-degree murder may be aggravated by the following circumstances:
 

 1. The murder was committed by a person under sentence of imprisonment.
 

 2. The murder was committed by a person who was previously convicted of another murder or of a felony involving the use or threat of violence to the person of another.
 

 Geary contends that the finding of these two aggravating circumstances based on the same prior conviction violated his rights to due process, to a reliable sentence, and to not be placed twice in jeopardy. He contends that, where one offense is “incident” to an offense for which he was already convicted, prosecution for the incidental offense is barred by double jeopardy. Applying this concept to his case, Geary argues that the sentence of imprisonment which was the basis for the first aggravating circumstance under NRS 200.033(1) was imposed solely as a result of the prior conviction which was the basis for the second aggravating circumstance under NRS 200.033(2). Therefore, Geary asserts that a finding of both aggravating circumstances violated the prohibition against double jeopardy.
 

 Geary further contends that these two aggravating circumstances violate due process and the Eighth Amendment because
 
 *1448
 
 they increase the quantum of death eligibility on the basis of characteristics which make no measurable contribution to acceptable goals of punishment. Geary argues that there is no legislative intent in favor of duplicative aggravating circumstances. He urges this court to analyze the issue as it practically applies to his case, and to conclude that the state’s separate interests are not met by imposition of duplicative aggravating circumstances. Finally, Geary contends that imposition of both aggravating circumstances cannot be said to be harmless beyond a reasonable doubt.
 

 Geary raised these contentions in his direct appeal, and we rejected them, noting that the two aggravators could, hypothetically, be based upon completely different circumstances and that they address different state interests.
 
 Geary II,
 
 110 Nev. at 266-67, 871 P.2d at 930-31. We now reject them again for the same reasons. Further, we consider a double jeopardy analysis to be inappropriate in this case. Geary does not argue that he is being unfairly punished twice for a prior conviction. Rather, he argues that his prior conviction should not be parsed into two separate sentencing considerations for the purpose of meting out punishment for the instant offense. Moreover, the aggravating circumstances do not violate Geary’s rights to due process or a reliable sentence. The first aggravating circumstance advances the state’s interest in punishing more harshly those who commit murder after having been granted the privilege of parole, and the second aggravator advances the state’s interest in punishing more harshly repeat offenders. Both of those interests are advanced in this case even though the aggravating circumstances arise from the same underlying criminal offense.
 

 3. Other penalty phase instructions
 

 In our order granting rehearing, we instructed Geary to address the propriety of the jury instructions. Geary argues at length that the penalty phase instructions failed to provide specific and detailed guidance to the jury and thus violated his state and federal constitutional rights to due process and against cruel and unusual punishment. First, Geary contends that the instructions misled the jury into believing that mitigating circumstances had to be found unanimously before they could be weighed against the aggravating circumstances. Geary contends that, in light of the extensive mitigating evidence presented during the penalty phase, this error cannot be considered harmless. Geary further contends that the jury was not explicitly instructed that aggravating circumstances had to be found unanimously and that the penalty phase instructions as a whole did not adequately specify how the
 
 *1449
 
 penalty determination was to be made. He attacks the structure of the statutory death penalty scheme and argues that appellate reweighing is wrong. Geary asserts that this court’s decision in Allen v. State, 99 Nev. 485, 665 P.2d 238 (1983), to allow consideration of non-statutory aggravating evidence was unconstitutional and contrary to the legislative intent behind the overall statutory scheme. Geary contends that he was prejudiced by the overbroad allowance of aggravating evidence because the jury was permitted to hear evidence of criminal conduct for which he was never convicted.
 
 [2]
 
 Finally, Geary contends that the instructions did not adequately convey to the jury that it is never required to impose the death penalty.
 

 We have recently considered and rejected the argument that the jury instructions misled the jury into believing that mitigating circumstances had to be found unanimously.
 
 See
 
 Jiminez v. State, 112 Nev. 610, 918 P.2d 687 (1996). However, we conclude that other penalty phase instructions suffer from constitutional defects. The jury was never explicitly instructed that its finding of each aggravating circumstance had to be unanimous. The jury was simply instructed to find aggravating circumstances beyond a reasonable doubt, to weigh them against mitigating circumstances, and to indicate those aggravating circumstances on the verdict form.
 

 Although the phrase “beyond a reasonable doubt” arguably suggests that unanimity is required, no instruction explicitly informed the jury whether its findings of aggravating circumstances had to be unanimous. A properly instructed jury is imperative in the capital sentencing process.
 
 See
 
 Walton v. Arizona, 497 U.S. 639, 653 (1990) (“When a jury is the final sentencer, it is essential that the jurors be properly instructed regarding all facets of the sentencing process.”) Failure to so instruct the jury results in a failure to adequately guide the jury in its sentencing determination, and mandates a new penalty hearing.
 

 The order granting rehearing directed Geary to address the propriety of jury instruction numbers three and eleven. Unfortu
 
 *1450
 
 nately, nowhere in Geary’s lengthy presentation does he specifically discuss these instructions. Having failed to adhere to this court’s explicit directive, Geary has arguably waived his right to challenge these instructions on rehearing. Nevertheless, because of the gravity of the penalty to be imposed in this case, we address these issues on our own accord.
 
 McCullough,
 
 99 Nev. at 74, 657 P.2d at 1158. In so doing, we conclude that the jury may have been confused by both instructions.
 

 Penalty Phase Jury Instruction Number Three reads as follows:
 

 The defendant in this case has been found guilty of murder in the first degree.
 

 Under the law of this State, you must now determine the sentence to be imposed upon the defendant. First degree murder is punishable by death only if the jury finds one or more aggravating circumstances have been proved beyond a reasonable doubt and the jury further finds that any mitigating circumstances do not outweigh the aggravating circumstances.
 

 Otherwise, murder in the first degree is punishable by imprisonment in the state prison for life with or without the possibility of parole.
 

 By instructing the jury that it
 
 “must”
 
 determine the sentence, that murder is punishable by death
 
 “only if”
 
 aggravating circumstances outweigh mitigating circumstances, and that “otherwise” murder
 
 “is
 
 punishable” by life imprisonment, this instruction may not have adequately conveyed to the jury that it is never required to impose the death penalty regardless of the presence or absence of aggravating or mitigating circumstances. However, elsewhere the jury was instructed that the weighing process is a qualitative, not a quantitative, process and that “[ultimately, the discretion of whether to impose the death penalty belongs to the jury.”
 
 [3]
 
 Because the jury may have been confused by these arguably conflicting instructions, the process by which the jury arrived at its verdict was irreversibly tainted.
 
 [4]
 

 
 *1451
 
 The jury may also have been misled regarding when the sentence it imposed was to be carried out. Penalty Phase Jury Instruction Number Eleven reads as follows:
 

 You have heard evidence that Melvin Geary is presently serving a prison sentence. The laws of the State of Nevada provide that any sentences imposed in this case will have to be served consecutive to the sentence he is presently serving.
 

 “Consecutive” means that the prison sentence Mr. Geary is now serving must be completed or commuted before the sentence in this case will begin to run.
 

 By instructing the jury that Geary’s 1973 murder sentence “must be completed or commuted before the sentence in this case will begin to run,” Penalty Phase Instruction Number Eleven may have misled the jury into believing that Geary would not be executed unless he was paroled from his current sentence of life in prison, or his sentence was commuted. The jury was instructed that a death sentence, in essence, would result in a term of life in prison without the possibility of parole, with the threat of execution hanging over Geary’s head in the event he sought parole or commutation of his sentence. Thus, there is a reasonable probability that the jury did not realize that the death sentence which it imposed would actually be carried out. “[I]t is constitutionally impermissible to rest a sentence on a determination made by a sentencer who has been led to believe that the responsibility for determining the appropriateness of the defendant’s death rests elsewhere.” Caldwell v. Mississippi, 472 U.S. 320, 328-29 (1985). If the jury is not properly instructed regarding the gravity of its responsibility, the jury may minimize the importance of its role, which is an “intolerable danger” in the capital sentencing process.
 
 Id.
 
 at 333. In this case, the jury was told that Geary would not be executed until he completed his first sentence of life in prison. Thus, there is an intolerable danger that the jury minimized its role because it believed that the ultimate determination of death rested with others, such as Geary, the Pardons Board, or the Parole Board. Consequently, Penalty Phase Jury Instruction Number Eleven was improperly given in this case.
 

 Accordingly, we are compelled to vacate appellant’s sentence and remand this case for a new penalty hearing.
 

 [1]
 

 On March 29, 1995, Geary filed a request to take judicial notice of a portion of a transcript in another case. On April 4, 1995, the state filed an opposition to this request. Cause appearing, we deny appellant’s request.
 
 See
 
 Occhiuto v. Occhiuto, 97 Nev. 143, 145, 625 P.2d 568, 569 (1981) (recognizing that generally a court should not take judicial notice of records in a different case).
 

 [2]
 

 Specifically, Geary is referring to penalty hearing testimony regarding the circumstances which led to discovery of the 1973 murder. Police officers went to Geary’s apartment after receiving a report that he had shot a motel clerk in the ear during a robbery. Upon entering the apartment, they discovered bloody drag marks. Geary ultimately confessed to having stabbed a woman he met at a bar with a boning knife and dumping her body in the desert. Geary was convicted of the murder but not of the robbery or shooting at the motel.
 

 [3]
 

 During closing argument in the penalty phase of Geary’s trial, the district attorney said “You are never required to do that [return a verdict of death], but you may return a verdict of death.” Arguments by the state may enlighten the jury concerning the imposition of the death penalty, but may never be a substitute for proper instruction.
 

 [4]
 

 The defense offered, but the district court rejected, the following instruction: “A jury is never required to impose a sentence of death. A defendant is never required to establish mitigating circumstances to be sentenced to less than death.” This instruction would have cured the problem with Penalty Phase Jury Instruction Number Three.