*939 OPINION

Per Curiam:

Claudia Canada, Gary Scherer, and Ann Schuck were arrested on the charges of conspiracy to murder Harold Dice Goodwine, burglary of Goodwine’s apartment, robbery of Goodwine, who was sixty-nine years old, and the murder of Goodwine with a deadly weapon. On the eve of trial, Schuck pleaded guilty to second degree murder in exchange for her testimony against Canada and Scherer. Schuck claimed that Scherer solicited her to help Canada kill Goodwine and that Schuck had accompanied Canada and witnessed the murder.
Beginning March 27, 1995, Canada and Scherer were jointly tried before a jury and subsequently convicted on all charges. Scherer and Canada theorized that Schuck, alone or with the help of one or more other witnesses who testified that Scherer and Canada had solicited them to kill Goodwine, had perpetrated the crime. Both parties appeal their convictions asserting numerous errors. Because we conclude that there was prejudicial juror misconduct during Canada and Scherer’s joint trial, we reverse their convictions and remand the case to the district court for retrial.

Retrial is mandated due to prejudicial juror misconduct

During voir dire and on the jury questionnaire, the ninth juror, seventy-four year old Robert Gordon, was asked whether he, a family member, or a close friend had ever been a victim of a crime. He answered, “Thank God, No” and “Never.” Following the conclusion of Scherer and Canada’s trial, an investigator for Canada interviewed several members of the jury.
The investigator’s affidavit stated that during the interview, several jurors, including the foreperson, told him that there had been a strong (five person) contingent to acquit Canada. However, one of the interviewees stated that Canada’s acquittal could never have materialized because Juror Gordon would have *940 insisted on conviction even if the jury had favored acquittal by an eleven to one vote. These interviewees further stated that Juror Gordon “repeatedly and unequivocally stated his feelings about a crime of this nature,” and he informed the other jurors, both during the trial and penalty phases, that his own father had been murdered when he was an infant.
Scherer and Canada moved for a mistrial based on these revelations regarding Juror Gordon, and several evidentiary hearings were subsequently held. At the first evidentiary hearing, Juror Gordon admitted that, during deliberations, he had drawn parallels between the instant case and his own situation (i.e., losing his father to murder), noting that Goodwine’s son was the real victim. He admitted that he was one of the strongest supporters of Scherer and Canada’s conviction and the imposition of the harshest possible sentence.
In explaining his failure to reveal his father’s murder, Juror ■ Gordon stated that he did not get along with his mother and did not know whether his father was dead or alive until he found an article about the murder after his mother died. On his jury questionnaire, he stated that his mother died in 1978, but later testified that she had actually died in 1969. Although he claimed that he did not learn of his father’s death until his mother’s death, he testified that he had investigated the murder in 1961 and on at least one other occasion. At this first evidentiary hearing, Juror Gordon testified that he did not remember that his father had been murdered, yet listed his father’s 1922 death on the questionnaire, when he had “a flash of memory.” He then stated that the reason he denied any family member had ever been a victim of a crime was because he did not consider his father part of his family because the murder had occurred when Juror Gordon was an infant. During this first evidentiary hearing, Juror Gordon also mentioned that organized crime groups had stolen seven of his Los Angeles diaper businesses over a period of eight or nine years.
Because of the repeated references during trial to Scherer’s organized crime connections as a member, hit man, and “enforcer,” the defense sought an additional evidentiary hearing on Juror Gordon’s allegations of organized crime victimization. Juror Gordon asked the court to delete his name and any mention of his former Los Angeles diaper business from any records connected to this case because he feared retribution by organized crime “guerrillas.” At the second evidentiary hearing, Juror Gordon testified to specific instances wherein the mob had burned down his business, extorted money from him, and threatened to kill him, along with his wife and stepdaughter.
*941 In Lopez v. State, 105 Nev. 68, 89, 769 P.2d 1276, 1290 (1989), this court held that where a juror has failed to reveal potentially prejudicial information during voir dire, the relevant inquiry is whether the juror is guilty of intentional concealment; the answer to this question must be left to the trial court’s sound discretion. The denial of a mistrial based upon juror misconduct will not be disturbed on appeal in the absence of a clear showing of abuse. Lane v. State, 110 Nev. 1156, 1163, 881 P.2d 1358, 1363-64 (1994). The trial court concluded that there had been no juror misconduct because Juror Gordon had not intentionally concealed any information during the jury selection process. We disagree. We conclude that given the numerous, major crimes of which Juror Gordon claimed that he and his family were victims, the trial court abused its discretion in failing to find intentional concealment.
We must next consider whether the misconduct amounted to harmless or prejudicial error. Geary v. State, 110 Nev. 261, 265, 871 P.2d 927, 930 (1994), vacated on other grounds by Geary v. State, 112 Nev. 1434, 930 P.2d 719 (1996). “[A] new trial must be granted unless it appears, beyond a reasonable doubt, that no prejudice has resulted.” Lane, 110 Nev. at 1164, 881 P.2d at 1364. Prior to Lane, this court stated that factors to be considered when determining whether juror misconduct constituted harmless error include “ ‘whether the issue of innocence or guilt is close, the quantity and character of the error, and the gravity of the crime charged.’ ” Rowbottom v. State, 105 Nev. 472, 486, 779 P.2d 934, 943 (1989) (quoting Big Pond v. State, 101 Nev. 1, 3, 692 P.2d 1288, 1289 (1985)).
The character of the error — concealing repeated crime victimization during jury selection, yet repeatedly raising the fact that his father was murdered during deliberation, and the considerable organized crime references in this case — weighs in favor of a finding of prejudice. The gravity of the crimes charged (first degree murder) also weighs in favor of such a finding. Finally, having reviewed the evidence, we conclude that the issue of Scherer and Canada’s guilt or innocence was close enough such that we cannot say, beyond a reasonable doubt, that Canada and Scherer were not prejudiced by this juror misconduct.

CONCLUSION

We conclude that the juror misconduct in this case was so *942 pervasive as to taint the fairness of Scherer and Canada’s convictions. Accordingly, we reverse and remand this case to the district court for a new trial.